USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/20/2018___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                       :

KAREN AFLALO,                           :
                                         :

                   Plaintiff,    :

                                         :

          - against -        :

                                         :

CANTOR FITZGERALD, L.P., CANTOR  :
FITZGERALD SECURITIES, INC., BGC  :
PARTNERS, INC., GFInet, INC., and GFI  :
GROUP, INC.,                     :
                                         :

                 Defendants.  :
                                         :

-----------------------------------------------------------X

16-CV-9380 (VSB)

**OPINION & ORDER**

Appearances:

Eric Robert Stern
Sack & Sack, LLP
New York, New York
*Counsel for Plaintiff*

Nirav Sanjay Shah
Cantor Fitzgerald
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Karen Aflalo brings this suit pursuant to the Fair Labor Standards Act ("FLSA"),

29 U.S.C. § 215(a)(3), and New York Labor Law ("NYLL"), N.Y. Lab. Law § 215, against

Defendants Cantor Fitzgerald, L.P., Cantor Fitzgerald Securities, Inc. (collectively, "Cantor

Fitzgerald"), BGC Partners, Inc. ("BGC"), GFInet, Inc., and GFI Group, Inc. ("GFI," and

together with BGC and Cantor Fitzgerald, "Defendants"), alleging that Defendants terminated

her employment in retaliation for her internal complaints with respect to Cantor Fitzgerald's

misclassification of employees as exempt from overtime.

Before me is Defendants' motion to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). Because I find that Plaintiff has failed to establish that she was engaged in "protected activity" for the purpose of establishing a prima facie claim under the FLSA, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's FLSA claim, and this claim is dismissed. Because I have dismissed Plaintiff's FLSA claim, I decline to exercise supplemental jurisdiction over Plaintiff's NYLL claim, and Defendants' motion to dismiss is also GRANTED with respect to this claim and it is dismissed without prejudice to filing that claim in state court.

I.     **Background**[1]

A.     *Plaintiff's Employment at GFI, BGC, and Cantor Fitzgerald*

Plaintiff started working at GFI in approximately March 2002, and remained employed there until February 2015 when BGC, an affiliate of Cantor Fitzgerald, L.P., acquired GFI, and Plaintiff became either a BGC or Cantor Fitzgerald employee. (Compl. ¶¶ 22, 26.)[2] At GFI, Plaintiff was a "well respected, senior human resources employee responsible for managing, developing, and administering strategies for employee relations, talent acquisition, performance management, HR compliance, payroll, compensation, and benefits supporting all back and front staff in the Americas region." (*Id.* ¶ 27.)

When Plaintiff started working at either BGC or Cantor Fitzgerald after the acquisition announcement, she met with senior personnel in the human resources group, including: (1) Lori Pennay, Cantor Fitzgerald's Global Head of Human Resources; (2) Stephen Merkel, Cantor

---

[1] The following factual summary is drawn from the allegations of Plaintiff's complaint, filed on January 12, 2017 ("Complaint"), which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Compl." refers to Plaintiff's Complaint, filed January 12, 2017. (Doc. 13.)

Fitzgerald's General Counsel; (3) Dan Aiken, a Cantor Fitzgerald "Vice President, Human Resources Generalist" and "Human Resources Business Partner who supported Accounting, Finance, and Operations;" and (4) Patricia Dreste, another senior-level Cantor Fitzgerald executive. (*See id.* ¶¶ 28–35, 74.) Plaintiff worked closely with Pennay, who "relied heavily on [Plaintiff] to serve in a global capacity working with other GFI Human Resources Directors in the [Europe, Middle East, and Africa regions] and Asia Regions in order to streamline . . . countless global headcount reports, global payroll reports, and information on GFI's global benefits and policies." (*Id.* ¶ 31.) Beginning in March 2015, Plaintiff also began working closely with Aiken to help "integrate the GFI Accounts Payable, Accounts Receivable, Accounting, and Middle/Back Office Operations staff into Cantor's teams and business." (*Id.* ¶ 36.)

### B. *Puente Action*

On or about July 6, 2015, Steven Puente, a former Cantor Fitzgerald employee who worked at the company's helpdesk, filed a class action suit in the Southern District of New York against Cantor Fitzgerald, alleging violations of the FLSA and the NYLL ("Puente Action"). (*Id.* ¶ 37.) The Puente Action alleged that Cantor Fitzgerald was systematically misclassifying certain categories of employees as exempt from overtime and failing to pay these employees their overtime wages. (*See id.* ¶¶ 37–38.) It also alleged that Cantor Fitzgerald was (1) systematically trying to force misclassified employees into signing a contract that would give away their rights to overtime, (2) failing to notify employees of the FLSA and NYLL overtime provisions, and (3) failing to keep adequate records. (*Id.* ¶ 41.)

### C. *Plaintiff's Discovery of Misclassifications*

In connection with Plaintiff's work with Pennay and Aiken, Plaintiff looked into how GFI and Cantor Fitzgerald classified employees for the purpose of overtime—i.e., exempt or non-exempt. (*Id.* ¶ 39–40, 46–57.) For example, during a telephone call Pennay asked Plaintiff how GFI had classified employees working at its helpdesk, and Plaintiff told her that when she started working at GFI employees had been "misclassified as exempt employees; but that, following an FLSA audit that was completed in conjunction with the guidance of the law firm Epstein, Becker & Green, 'Helpdesk' employees were properly re-classified as non-exempt." (*Id.* ¶¶ 39–40.) Separately, in connection with the work she was doing with Aiken, Plaintiff began "investigating the manner in which Cantor was classifying different employees in the Operation/Accounting department" for Aiken. (*Id.* ¶ 47.)

After the Puente Action commenced, Plaintiff helped with reviewing classes of employees at Cantor Fitzgerald to determine whether they were being misclassified. (*Id.* ¶ 46.) She found that Cantor Fitzgerald was misclassifying employees in the Accounts Payable, Accounts Receivable, and Junior Accountant departments, and as she identified the erroneous classifications, Plaintiff brought them to the attention of both Aiken and Pennay. (*Id.* ¶¶ 48–49.) When she described the misclassifications to Aiken he was "repeatedly dismissive," and "deflected" telling Plaintiff that he would raise the issue with Dreste but that he "did not think that anything would change, as that's the way they have always been paid." (*Id*. ¶¶ 49–50.)

Plaintiff also offered solutions to these issues based on her "vast experience reviewing the employment duties of all staff at GFI." (*Id.* ¶¶ 51–52.) She told Pennay of her experience "investigat[ing] GFI's classification of other employee classes" and informed Pennay that "in order to remediate GFI's unlawful classification, [she] had worked with GFI's legal department

to hire outside FLSA experts from [a] law firm . . . to assist with her investigation." (*Id.* ¶ 53.)
Plaintiff told Pennay that in addition to overseeing this audit, she managed an internal FLSA
audit. (*Id.* ¶ 54.)

Pennay responded by displaying "her apparent relief that [Plaintiff] clearly had extensive
experience with FLSA legal and compliance matters." (*Id.* ¶ 55.) Pennay also stated that she
would rely on Plaintiff to conduct investigations to "help determine . . . which classifications of
employees would be exempt and which would be non-exempt from mandatory overtime." (*Id.*
¶ 56.) Pennay told Plaintiff that she "had been mandated" by Cantor Fitzgerald's CEO to "clean
up the mess right away" and was counting on Plaintiff to help her do so. (*Id.* ¶¶ 55–56.) Pennay
also informed Plaintiff that she was interviewing law firms to help with the process. (*Id.* ¶ 57.)

### D.      *Cantor Fitzgerald's Response*

Based on her conversations with Pennay, Plaintiff continued to look into Cantor
Fitzgerald's employee classifications and bring misclassifications to Pennay and Aiken's
attention. (*See id.* ¶ 58.) According to Plaintiff, however, Cantor Fitzgerald resisted changing
the way it classified employees and continued using the same classification mechanisms without
implementing Plaintiff's suggestions. (*See id.* ¶¶ 58–74.)

In October 2015, Aiken talked to Plaintiff about a Junior GFI Accountant who was
working overtime regularly, and told Plaintiff that Cantor Fitzgerald was going to change the
employee's classification from non-exempt to exempt because the Finance Manager was
becoming "angry about all of [the] submitted overtime." (*Id.* ¶ 59.) Aiken further stated that he
would "prepare a new offer letter for [the employee] to sign" so that it would be "legit." (*Id.*) In
response, Plaintiff told Aiken that the employee was properly classified as a non-exempt
employee and that Aiken should discuss this decision with Pennay and Dreste. (*Id.* ¶ 60.) Aiken

stated that he was "confident" that members of management would agree with the decision to re-classify the employee as exempt. (*Id.*)  Later that month, when Plaintiff was on the phone with Pennay, she told Pennay her concerns, and although Pennay told Plaintiff she would look into it, Plaintiff did not hear back from her. (*Id.* 61–62.)

In February 2016, Plaintiff was directed to terminate the employment of two GFI Operations employees, Sujit Chakravarty and Kevin Mullen, because they were working too much overtime. (*Id.* ¶ 66.)  She was told to tell them that their employment was being terminated as part of a "reduction in force" ("RIF"), rather than due to overtime. (*Id.* ¶ 67.)  In conversations with Chakravarty and Mullen's managers, the managers told Plaintiff they were surprised that Chakravarty and Mullen were getting paid overtime because they thought that "none of Cantor's Operations employees were overtime eligible." (*Id.* ¶ 68.)  Plaintiff informed the managers that this was not the case, and that at GFI, Operations employees similarly situated were always paid overtime. (*Id.* ¶ 69.)  Despite this, both Chakravarty's and Mullen's employment was terminated, (*id.* ¶ 70), and Cantor Fitzgerald started interviewing replacements for the two positions immediately following the terminations, (*id.* ¶ 71).

Plaintiff was alarmed by this incident and spoke with Aiken to discuss her concerns. (*Id.* ¶ 72.)  Aiken responded by telling her that "[t]his is the way it has always been done at Cantor" and that Operations employees were never paid overtime. (*Id.* ¶ 73.)  Even after this incident, Plaintiff "consistently expressed and voiced her concerns to multiple supervisors in human resources as well as co-workers at Cantor." (*Id.* ¶ 79.)  She told her supervisors that she was concerned with Cantor Fitzgerald's classification system and urged managers to adopt the method used at GFI. (*Id.* ¶ 80.)  "[E]ach time [Plaintiff] raised concerns to Aiken about these matters, Aiken decided against addressing them with management." (*Id.* ¶ 83.)  Rather, Cantor

Fitzgerald terminated employees who worked too much overtime or opposed their classification. (*Id.* ¶¶ 84–85.)

### E. *The Termination of Plaintiff's Employment*

Plaintiff believes as a result of her continued opposition to Cantor Fitzgerald's classification system, she was retaliated against and ultimately her employment was terminated. She did not receive a bonus in 2015, despite "specific promises" of a bonus and satisfying all conditions for a bonus. (*Id.* ¶ 88.) On March 17, 2016, Dreste and Pennay visited Plaintiff in her office and told her that "they were receiving pressure to cut costs in the human resources budget" and were thus "eliminating her role." (*Id.* ¶ 89.) At that time, they told her that she would receive her $50,000 bonus for 2015 before she left, (*id.* ¶ 90), and that she should start transitioning her work to Dyanne Rosado, who would be handling Plaintiff's job responsibilities moving forward, (*id.* ¶ 91).

A few days after Plaintiff was told that her position was going to be eliminated, Cantor Fitzgerald promoted Rosado from Vice President to Senior Vice President of Human Resources. (*Id.* ¶¶ 94–95.) Because of the increased work load that came with her promotion Rosado could not handle on-campus recruiting—one of the responsibilities transitioned to her from Plaintiff— and Dreste and Pennay were required to hire a recruiter to focus solely on on-campus recruiting. (*Id.* ¶¶ 96–97.) Thus, Cantor Fitzgerald "increased spending and decreased efficiencies" by terminating Plaintiff. (*Id.* ¶ 98.) Further, managers at GFI did not know that Plaintiff's employment was being terminated and were "unaware of any issues" regarding Plaintiff's employment, (*id.* ¶¶ 100–01), and the termination was not formally designated as a RIF, (*id.* ¶ 105).

## II.  **Procedural History**

Plaintiff initiated the instant action by filing the Complaint. On March 10, 2017, Defendants notified me that they anticipated filing a motion to dismiss the Complaint, (Doc. 16), and on April 7, 2017, I held a pre-motion conference regarding the anticipated motion, (*see* Dkt Entry Apr. 7, 2017). Defendants then filed their motion to dismiss on May 8, 2017, (Doc. 20), Plaintiff filed her opposition on June 23, 2017, (Doc. 25), and Defendants filed their reply on July 14, 2017, (Doc. 28).

## III.  **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Although all

allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

## IV. <u>Discussion</u>

### A. *Retaliation Under the FLSA*

#### 1. Applicable Law

Under the FLSA, an employer is prohibited from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). This anti-retaliation provision enforces appropriate wage and hour standards under the FLSA by ensuring that "fear of economic retaliation" does not "operate to induce aggrieved employees quietly to accept substandard conditions." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960).

FLSA retaliation claims are analyzed under the familiar three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 109 (S.D.N.Y. 2015). Under the *McDonnell Douglas* framework, an employee initially bears the burden of setting forth a prima facie case of discrimination by establishing "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Dunn*, 143 F. Supp. 3d at 109 (quoting *Mullins*, 626 F.3d at 53). Once a plaintiff makes out a prima facie case of retaliation, "'the burden shifts to the employer to give a legitimate reason for its actions,' and, 'if the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for

9

retaliation.'"  *Wang v. Palmisano*, 157 F. Supp. 3d 306, 328 (S.D.N.Y. 2016) (quoting *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014)).

In *Greathouse v. JHS Security Inc.*, 784 F.3d 105 (2d Cir. 2015), the Second Circuit revised its definition of "protected activity" for the purpose establishing a prima facie case of retaliation.  Before *Greathouse* courts in this Circuit routinely held that "an employee pursuing  a claim for unlawful retaliation [must] have done more than voice an equal pay complaint to a supervisor," and must have "formally filed . . . a written complaint . . . with a government agency."  *Greathouse*, 784 F.3d at 106 (internal quotation marks omitted).  In *Greathouse*, however, the court found that, in light of the Supreme Court's decision in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011), an employee may bring a FLSA retaliation action based on an oral complaint rather than a written complaint as long as "the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'"  *Greathouse*, 784 F.3d at 107 (quoting *Kasten*, 563 U.S. at 14).

While *Greathouse* made clear that oral complaints may suffice for the purpose of a retaliation claim under the FLSA, a plaintiff must still make "an assertion of rights protected by the statute" in order to establish he or she engaged in a protected activity.  *Kasten*, 563 U.S. at 14; *see also* 29 U.S.C. § 215(a)(3) ("[I]t shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee . . . .").

No court in this Circuit has decided under what circumstances, if at all, an employee who

is not asserting her own rights under the FLSA but who alerts her employer to FLSA violations as part of her job duties engages in "protected activity" for the purpose of a retaliation claim under the FLSA. However, in *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir. 1996), *cert. denied*, 520 U.S. 1186 (1997), the Tenth Circuit held that "[d]espite [an] expansive interpretation of § 215(a)(3), [the Tenth Circuit has] never held that an employee is insulated from retaliation for participating in activities which are neither adverse to the company nor supportive of adverse rights under the statute which are asserted against the company." *Id.* at 1486. Rather, it is the "assertion of statutory rights . . . by taking some action adverse to the company . . . that is the hallmark of protected activity under § 215(a)(3)." *Id.* Because the plaintiff in *McKenzie* was "merely performing her job as a personnel director" and "never crossed the line . . . to an employee lodging a personal complaint about the wage and hour practices of her employer and *asserting* a right adverse to the company," and because the plaintiff did not initiate any FLSA claims, either on behalf of herself or others, the plaintiff did not establish that she was engaged in protected activity. *Id.*

Similarly, in *Rodriguez v. Ready Pac Produce*, No. 13-4634 (RBK/JS), 2014 WL 1875261 (D.N.J. May 9, 2014), Judge Robert B. Kugler held—consistent with the law in the Tenth Circuit—that "[t]o engage in protected activity, 'the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.'" *Id.* at *7 (quoting *McKenzie*, 94 F.3d at 1486). Judge Kugler found that the plaintiff's retaliation claim was insufficiently pled because "[t]he Complaint d[id] not indicate that [the plaintiff] actively assisted another employee in asserting [a] . . . claim, or that he

11

otherwise engaged in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." *Id.* at *9 (internal quotation marks omitted). The complaint had only indicated that the plaintiff had "informed management that they could potentially be liable if certain employees chose to pursue such a claim," which Judge Kugler held did not constitute a protected activity. *Id.*

## 2. Application

Here, Plaintiff alleges that Defendant retaliated against her following "several sufficiently clear and specific internal complaints made by Plaintiff to her employer" regarding Cantor Fitzgerald's classification of its employees. (Compl. ¶ 2.) Plaintiff claims that she was engaging in protected activity because Defendants "reasonably understood that Plaintiff was asserting the FLSA and NYLL rights of Cantor employees," (*id.*), and "the Complaint adequately pleads that [Plaintiff's] complaints of FLSA violations were sufficiently clear and detailed and numerous, and Cantor fully understood those complaints by [Plaintiff] as a call for action to its decision makers," (Pl.'s Opp. 6). Defendants argue that Plaintiff was merely fulfilling her job responsibilities when alerting Cantor Fitzgerald to employee misclassifications and has thus failed to state a claim for retaliation. (Defs.' Mem. 5–9.)[3] I agree with Defendants and find that

---

[3] In supporting this argument, Defendants cite to cases in the First, Fifth, Ninth, and Tenth Circuits discussing the so-called "manager rule," which Defendants characterize as a rule that "a manager responsible for raising wage and hour issues has not, as a matter of law, put her employer on 'fair notice' under the FLSA" such that he or she has engaged in "protected activity" under the FLSA. (*See* Defs.' Mem. 5–6.) Plaintiff opposes this argument by stating that she was not a "manager" and instead was "more akin to a rank-and-file human resources employee, who asserted her rights under the statute, than a human resources manager." (Pl.'s Opp. 11–12.) In accordance with my holding below, I find that it is one's job responsibilities coupled with the actions taken by the employee related to the FLSA, and whether those job responsibilities and actions sufficiently put an employer on notice, "in light of both content and context, as an assertion of rights protected by the statute and a call for their protection," that is the relevant inquiry. *Greathouse*, 784 F.3d at 107 (quoting *Kasten*, 563 U.S. at 14); *see also McKenzie*, 94 F.3d at 1486–87 (stating that the relevant inquiry is whether a plaintiff "step[s] outside his or her role of *representing the company* and either file[s] (or threaten[s] to file) an action adverse to the employer, actively assist[s] other employees in asserting FLSA rights, or otherwise engage[s] in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." (emphasis added)). "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of their Motion to Dismiss, filed May 8, 2017. (Doc. 21.) "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition of Defendants' Motion to Dismiss, filed June 23,

12

Plaintiff has not plausibly alleged that she engaged in "protected activity" and has thus failed to establish a prima facie case of retaliation. *See McKenzie*, 94 F.3d at 1486; *Rodriguez*, 2014 WL 1875261, at *7.

As an initial matter, Plaintiff describes herself as "a human resources professional at Cantor [Fitzgerald]" whose expertise with matters related to the FLSA was "sought out" by Cantor, and whose "duties and responsibilities" included investigating Cantor Fitzgerald's classification methods and practices under the FLSA and NYLL. (Compl. ¶¶ 4, 6–7.) Specifically, Plaintiff repeatedly states that she asked to work on or was given the responsibility to investigate and report on Cantor Fitzgerald's employee classifications, and that senior-level employees were "relying on [her] expertise in reviewing FLSA compliance" and had asked her to "conduct . . . investigations" into the employee classification issues. (*See id.* ¶¶ 40, 55–56, 58, 63.) She characterized as part of her job responsibilities a "mandate to investigate, report and remedy Cantor's labor law violations." (*Id.* ¶ 63.) Although she did indicate that she spoke to Aiken and Pennay several times regarding Cantor Fitzgerald's misclassification of employees, (*see, e.g.*, *id.* ¶¶ 47, 49, 51), she was bringing these problems to their attention as part of her "mandate" to look into these issues, (*id.* ¶ 63). Pennay and Aiken were also human resource professionals at Cantor Fitzgerald with whom Plaintiff was working on issues related the FLSA. (*See* ¶¶ 29, 35.) In fact, Pennay, as Global Head of Human Resources, was a senior level executive that Plaintiff characterizes as either one of her supervisors or in a supervisory role. (*See id.* ¶ 3 (stating that her complaints were to "her supervisors and senior-level executives at Cantor").) In this context, Plaintiff was merely investigating these violations as part of her job— an activity that was "neither adverse to the company nor supportive of adverse rights under the

2017. (Doc. 25.)

statute which are asserted against the company." *McKenzie*, 94 F.3d at 1486.

Further, as in *Rodriguez*, the Complaint does not indicate that Plaintiff "actively assisted another employee in asserting" claims under the FLSA or NYLL, or that she "otherwise engaged in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." 2014 WL 1875261, at *9 (internal quotation marks omitted). The Puente Action had already been commenced before Plaintiff began investigating employee classifications, (*see* Compl. ¶¶ 37–41), and Plaintiff merely notified her managers and/or superiors of potential violations of the FLSA after the Puente Action brought some of these purportedly problematic classifications to light.

When Plaintiff was asked to terminate the employment of two Operations employees— Chakravarty and Mullen—allegedly because they were working too much overtime, she spoke to the employees' managers about how similarly situated employees at GFI were classified differently, (*see id.* ¶ 68). Although it is unclear whether Plaintiff herself terminated the employment of Chakravarty and Mullen, it is clear that their employment was ultimately terminated. (*Id.* ¶ 70.) There is no indication that Plaintiff stood in the way of their termination—at most, the allegations support the notion that she disagreed with the decisions of her superiors. (*See id.* ¶¶ 66–70 (stating that Plaintiff was "directed" to terminate employees based on the fact that they "submitted too much overtime," and that Cantor Fitzgerald terminated them).) There are no allegations that Plaintiff assisted these employees to assert any FLSA claims against Cantor Fitzgerald, or even that she encouraged them to file such claims on their own.[4] Nor does Plaintiff claim that she reported Cantor Fitzgerald's purported FLSA violations

---

[4] Plaintiff claims that these actions are enough to establish a retaliation claim because the FLSA retaliation provision is interpreted broadly, in line with the "expansive protection . . . applied to other employment-related practices, namely Title VII protections against discrimination and retaliation." (Pl.'s Opp. 10.) Plaintiff points particularly to *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015), where the Second Circuit, relying on the Supreme

14

to the Department of Labor or other appropriate government authority.

Thus, the actions Plaintiff took at Cantor Fitzgerald were as an employee and did not assert any adverse rights. Stated differently, Plaintiff did not "step outside . . . her role of representing the company" since she never "'actively assist[ed] other employees in asserting FLSA rights, or otherwise engage[d] in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." *Rodriguez*, 2014 WL 1875261, at \*7 (quoting *McKenzie*, 94 F.3d at 1486). Therefore, the allegations in the Complaint do not plausibly allege that Plaintiff engaged in "protected activity" for the purpose of establishing a prima facie case of retaliation under the FLSA, because her complaints were not "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Greathouse*, 784 F.3d at 107 (quoting *Kasten*, 563 U.S. at 14).

Because reporting on, and informing her managers of, employee misclassifications was part of Plaintiff's job responsibilities and there is no indication in the Complaint that Plaintiff was asserting her own rights or actively assisting others in asserting their rights pursuant to the FLSA, Plaintiff's conduct is not considered "protected activity" and thus Plaintiff fails to show a prima facie case of retaliation. Accordingly, I grant Defendants' motion to dismiss and dismiss

---

Court's decision in *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271, 276, 318 (2009) (internal quotation marks omitted), held that a manager who "communicat[es] to the employer the manager's own belief that the employer has engaged in a form of employment discrimination . . . virtually always constitutes opposition notwithstanding the employee's underlying job responsibilities." *Littlejohn*, 795 F.3d at 318 (internal quotation marks omitted). In other words, the court in *Littlejohn* held that "if an employee—even one whose job responsibilities involve investigating complaints of discrimination—actively 'supports' other employees in asserting their Title VII rights or personally 'complains' or is 'critical' about the 'discriminatory employment practices' of her employer, that employee has engaged in protected activity under § 704(a)'s opposition clause." *Id.* (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). These cases, however, do not apply in the FLSA context, since they each explicitly addressed the application of Title VII's opposition clause, which protects employees who "opposed any practice made an unlawful employment practice," 42 U.S.C. § 2000e-3(a)—a clause not included in the FLSA's retaliation provision, *see* 29 U.S.C. § 215(a)(3).

Plaintiff's FLSA claims.

### B. *Retaliation Under the NYLL*

A district court "may decline to exercise supplemental jurisdiction over a claim" once it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Indeed, "when federal claims are dismissed early in the litigation . . . dismissal of state law claims is appropriate." *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ.3608IWK), 2002 WL 1561126, at *3 (S.D.N.Y. July 15, 2002) (quoting *Cobbs v. CBS Broad. Inc.*, No. 97 CIV. 8284(MBM), 1999 WL 244099, at *8 (S.D.N.Y. Apr. 26, 1999)).

Further, under Section 215(1)(a) of New York Labor Law, "no employer shall discharge or retaliate against any employee because such employee has made a complaint to his or her employer regarding a NYLL violation." *Thompson v. Jennings & Hartwell Fuel Oil Corp.*, No. 14 CV 1857(RJD)(LB), 2015 WL 5437492, at *4 (E.D.N.Y. Aug. 27, 2015) (quoting N.Y. Lab. Law § 215(1)(a)). "The protection afforded to workers under the NYLL retaliatory termination provision is 'more broadly worded' than in the FLSA." *Id.* (quoting *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 263 (S.D.N.Y. 2008)).

Because I have dismissed Plaintiff's FLSA claim, the only claim remaining is Plaintiff's NYLL claim for retaliation over which I would only have supplemental jurisdiction. Because the balance of factors weigh towards declining to exercise jurisdiction, particularly considering the fact that the NYLL is more broadly worded than the FLSA, *see Thompson*, 2015 WL

5437492, at *4, I decline to exercise supplemental jurisdiction over these claims and they are dismissed without prejudice to filing in state court.

## V.     <u>Conclusion</u>

Because Plaintiff has failed to establish a prima facie case of retaliation under the FLSA, Defendants' motion to dismiss Plaintiff's Complaint is GRANTED in its entirety.  I decline to exercise supplemental jurisdiction over Plaintiff's NYLL claim, and this claim is therefore dismissed without prejudice to Plaintiff filing that claim in state court.  The Clerk of Court is respectfully directed to enter judgment for Defendants and close this case.

SO ORDERED.

Dated: March 30, 2018
     New York, New York

Vernon S. Broderick
United States District Judge